WILLIAMS, Judge.
Plaintiff, Phillips Petroleum Company, filed suit in Plaquemines Parish, the coastal parish nearest the offshore area in the Gulf of Mexico subject to the oil and gas sublease which it seeks to cancel and remove from the conveyance records of Plaquemines Parish. Through this appeal, defendant OKC Limited Partnership[1] contends that the trial court erred in overruling its declinatory exception raising the objection of improper venue because the immovable property subject to the sublease is in federal waters, beyond the coastal boundaries of the State of Louisiana. As we agree with defendant, we find the venue provision governing actions involving immovable property, LSA-C.C.P. art. 80, inapplicable to this suit. We, therefore, reverse the judgment of the trial court, sustain the exception and transfer this action to Orleans Parish, the parish in which defendant’s agent for service of process is located.
FACTUAL AND PROCEDURAL HISTORY
Phillips’ petition asserts that, on July 1, 1967, the United States of America (lessor) granted an oil and gas lease to Signal Oil and Gas Company, The Louisiana Land and Exploration Company, Amerada Petroleum Corporation and Marathon Oil Company (lessees), covering all of Block 89, South Pass Area, Offshore Louisiana. The petition avers the property subject to the lease is located off the shore of Louisiana, closest in physical proximity to the Parish of Plaquemines. It asserts that venue is, *353 therefore, proper in Plaquemines Parish under LSA-C.C.P. art. 80.
The petition further asserts that Aminoil USA Inc. became the successor in interest under the lease to Signal Oil and Gas Company. By a letter agreement known as a farmout agreement[2] (“Agreement”), dated May 26, 1977, effective June 14, 1977, Ami-noil contracted to sublease all of its undivided ¾ working interest in the lease to OKC Corp. Pursuant to the Agreement, by a document captioned Assignment of Interest in Oil and Gas Lease (“Assignment”), dated May 26, 1977, executed July 11, 1977, Aminoil subleased all of its undivided ¼ working interest in the lease to OKC Corp., subject to the terms and conditions of the Agreement, which included Aminoil’s reservation of an overriding royalty interest and net profits interest. Phillips is the successor in interest to Aminoil under both the Agreement and the Assignment.
The petition claims OKC breached the Agreement by reinterpreting the calculation of net profits interest and overriding royalty from a month-to-month basis to a basis of cumulating the balance in the net profits account. Thus, Phillips seeks an accounting in accordance with the net profits accounting provisions of the Agreement; an award for overriding royalty and net profits interest due and owing; an award for double damages and attorneys’ fees; a dissolution of the Agreement; and a cancellation of the Assignment.[3]
In response, OKC filed a declinatory exception raising the objection of improper venue. The exception states that OKC is a foreign partnership which does not have a business office, an establishment, or an agent for service of process[4] in Plaque-mines Parish. The exception asserts that venue is improper under LSA-C.C.P. art. 80 because this action does not assert an interest or right in any immovable property owned by OKC in Plaquemines Parish. It claims the immovable property related to this action, Block 89 in the South Pass Area, is located on the Outer Conntinental Shelf. It further asserts venue is improper under LSA-C.C.P. art. 80 because Phillips’ action for an accounting under and rescission of the Agreement has only an indirect connection to immovable property.
In its opposition to the exception, Phillips claims that, for venue purposes, the property affected by the sublease is situated in Plaquemines Parish because the Assignment burdens Block 89 as a matter of public record in Plaquemines Parish and because an object of this suit is to cancel the Assignment and its inscription on those records.
The trial court heard the exception on October 18, 1990. The written judgment overruling the exception was rendered on October 23, 1990, without written reasons. From that judgment, OKC has devolutively appealed.
MERITS OF OKC’S APPEAL
Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the sub *354 ject. LSA-C.C.P. art. 41. One of the general rules of venue is that an action against,
(6) A nonresident, other than a foreign corporation or a foreign or alien insurer, who has appointed an agent for the service of process in the manner provided by law, shall be brought in the parish of the designated post office address of an agent for the service of process. LSA-C. C.P. art. 42(6).
This general rule of venue, however, is subject to exceptions. LSA-C.C.P. art. 43. See LSA-C.C.P. arts. 71-85. The exception pertinent to actions involving immovable property, is contained in LSA-C.C.P. art. 80. That article provides in pertinent part:
A. The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:
(1)An action to assert an interest in immovable property, or a right in, to, or against immovable property, except as otherwise provided in Article 72;
* * * * * *
(3) An action arising from the breach of a lease of immovable property, including the enforcing of a lessor’s privilege or seeking the payment of rent. The venue authorized by this Sub-paragraph shall be in addition to any other venue provided by the law for such action.
Thus, venue for an action involving immovable property, such as a suit to cancel an immovable right and to seek statutory penalties and damages for violation of an immovable right, may be brought in the parish where the immovable is situated. LSA-C.C.P. art. 80.[5] Bailey v. Franks Petroleum, Inc., 417 So.2d 503 (La.App. 1st Cir.1982). Distinguish, Hawthorne Oil & Gas Corp. v. Continental Oil Co., 377 So.2d 285 (La.1979) [plaintiff sought rescission of a gas purchase agreement, a contract with a movable for its object], Nevertheless, as venue exceptions are in derogation of a common right, they must be strictly construed and the party claiming the benefit of an exception must bring itself clearly within the exception. Hawthorne Oil & Gas Corp. v. Continental Oil Co., supra.
Applying these precepts, we find the venue exception contained in LSA-C. C.P. art. 80 is inapplicable to this suit.
The gulfward boundaries of Louisiana’s coastal parishes west of the Mississippi River extend from the outer terminous of their common boundaries due south, true bearing, to the outer gulfward boundary of the state, and the gulfward boundary of said coastal parishes extend coextensively with the gulfward boundary of the state. LSA-R.S. 49:6. The gulfward boundary of the state extends a distance into the Gulf of Mexico three marine leagues from the coast. LSA-R.S. 49:1. See also 43 U.S.C. § 1312. Therefore, strictly construing the venue exception contained in LSA-C.C.P. art. 80, immovable property located beyond the gulfward boundary of Louisiana and of her coastal parishes, is not situated in a coastal parish.
Block 89, the immovable property burdened by the parties’ oil and gas sublease, is located on the Outer Continental Shelf, in federal waters. It is beyond the gulf-ward boundary of Plaquemines Parish and cannot be considered as within the parish’s boundaries for the purpose of determining venue. As Phillips failed to bring itself clearly within the venue exception, the general rule of venue, LSA-C.C.P. art. 42(6), must control. The trial court, therefore, erred as a matter of law in overruling OKC's declinatory exception.
LSA-C.C.P. art. 121 provides that “[w]hen an action is brought in a court of improper venue, the court may dismiss the action, or in the interest justice transfer it to a court of proper venue.” OKC has not *355 shown that Phillips knowingly filed suit in the wrong venue. See Habig v. Popeye’s Inc., 553 So.2d 963 (La.App. 4th Cir.1989). Consequently, justice is best served by transfering this action to Orleans Parish, the parish in which OKC’s agent for service of process is located.
For the reasons assigned, the judgment appealed is reversed, the declinatory exception is sustained, and this action is transferred to Orleans Parish. The parties are to bear their own costs.
REVERSED, RENDERED AND TRANSFERRED.

. OKC is a limited partnership organized under the laws of the State of Texas and is authorized to do and is doing business in the State of Louisiana with a registered office in New Orleans. It is the successor in interest to OKC Corp.

. A farmout agreement is a contract to assign oil and lease rights in acreage upon the completion of a drilling obligation and performance of the other provisions contained therein. Robinson v. North American Royalties, Inc., 509 So.2d 679, 681 (La.App. 3d Cir.1987).

. The petition also described two previous lawsuits that Phillips brought against OKC in federal court. The first suit, OKC I, allegedly resulted in a judgment in favor of Phillips and against OKC in the amount of $21,622,000 for the overriding royalty and net profits interest due under the Agreement for the period of June 14, 1977 through March 31, 1987. In the second suit, OKC II, Phillips sought compensatory damages, double damages, attorney’s fees and cancellation of the Agreement because audits allegedly established OKC made improper charges to the net profits account, including grossly excessive overhead allocations, in violation of the net profits accounting provisions set forth in the Agreement. Prior to trial, the parties allegedly entered into a consent judgment under which OKC paid to Phillips $3,149,647.
The claims made in this action, OKC III, were originally filed in federal court but were dismissed for lack of subject matter jurisdiction, due to the lack of diversity jurisdiction and the lack of jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1349.

.OKC’s supporting memorandum asserts that its agent for service of process in the State of Louisiana is the New Orleans law firm of Stone, Pigman. LSA-C.C.P. art. 42(6).

. Mineral rights, such as mineral leases, are real rights. LSA-R.S. 31:16. The nature of mineral rights is set forth in LSA-R.S. 31:18 as follows:
A mineral right is an incorporeal immovable. It is alienable and heritable. The situs of a mineral right is the parish or parishes in which the land burdened is located. All sales, contracts, and judgments affecting mineral rights are subject to the laws of registry.